In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00113-CR
NO. 09-17-00114-CR
NO. 09-17-00115-CR

_____

FRANCISCO SALAZAR, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-05-05000-CR (Counts 1, 2 & 3)**

## MEMORANDUM OPINION

Appellant Francisco Salazar appeals his convictions for one count of continuous sexual abuse of a child, one count of indecency with a child by sexual contact, and one count of sexual assault of a child. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a)(1), 22.011(a)(2)(B) (West Supp. 2017).[1] A jury found Salazar

---

[1] We cite to the current version of statutes, as subsequent amendments do not affect the disposition of this appeal.

1

guilty on all three counts and assessed punishment at forty years for continuous sexual abuse of a child, ten years for indecency with a child by sexual contact, and twenty years for sexual assault of a child, to be served concurrently. Salazar raises four issues on appeal. We affirm.

Procedural Background

A grand jury originally indicted Salazar on February 23, 2010, and re-indicted him on July 29, 2010. He was then indicted again on May 5, 2011. Salazar was tried under the May 5th indictment for one count of continuous sexual abuse of a child, one count of indecency with a child by sexual contact, and one count of sexual assault of a child. The May 5th indictment[2] alleged, in relevant part, the following:

> Francisco Salazar, hereinafter styled Defendant, . . . during a period that was 30 or more days in duration, to-wit: from on or about November 14, 2007 through November 29, 2008, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [E.G.], a child younger than 14 years of age, namely, Indecency with a Child, by having [E.G.] touch the sexual organ of the defendant[,] and Sexual Assault of a Child, by the defendant's sexual organ to contact or penetrate the mouth of [E.G.].
>
> . . . on or about July 1, 2007 in Montgomery County, Texas, Francisco Salazar, hereinafter styled Defendant, did then and there, with intent to

---

[2] We use initials herein to refer to the alleged victim and relational nouns to refer to family members and juveniles. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

arouse and gratify the sexual desire of the Defendant, engage in sexual contact by touching the breast of [E.G.], a child younger than 17 years of age and not the spouse of the defendant,

. . . on or about December 13, 2009 in Montgomery County, Texas, Francisco Salazar, hereinafter styled Defendant, did then and there intentionally or knowingly cause the penetration of the mouth of [E.G.], a child, by the defendant's sexual organ, or intentionally or knowingly cause the defendant[']s sexual organ to contact or penetrate the mouth of [E.G.], a child[.]

Salazar pleaded not guilty to all counts. The case was tried to a jury in July of 2011. The jury found Salazar guilty on all three counts.

On August 2, 2011, Salazar's trial counsel filed a motion for new trial and motion in arrest of judgment, a motion for a free reporter's record on appeal, and a motion to withdraw. In the motion for new trial, Salazar argued the verdict "was contrary to the law and evidence[,]" and that he was entitled to a new trial "in the interest of justice." On October 12, 2012, the trial court granted the motion to withdraw. On July 29, 2013, Salazar filed notices of appeal, which this Court dismissed as untimely. *See Salazar v. State*, Nos. 09-13-00341-CR, 09-13-00342-CR, & 09-13-00343-CR, 2013 Tex. App. LEXIS 12003 (Tex. App.—Beaumont Sept. 25, 2013, no pet.) (mem. op., not designated for publication).

On May 25, 2016, Salazar filed an application for a writ of habeas corpus in which he argued he had been denied the effective assistance of counsel because his trial counsel had not filed a proper motion for new trial or appeal. On February 15,

3

2017, the trial court issued findings of fact and conclusions of law, recommending that Salazar be permitted an out-of-time appeal but recommending that the relief be denied as to filing an out-of-time motion for new trial. In the habeas proceeding, the Court of Criminal Appeals found that Salazar was entitled to an out-of-time appeal and ordered that "[a]ll time limits shall be calculated as if the sentence had been imposed on the date on which the mandate of this Court issues." *Ex parte Salazar*, No. WR-86,489-01, 2017 Tex. Crim. App. Unpub. LEXIS 209, at *2 (Tex. Crim. App. Mar. 22, 2017, orig. proceeding) (not designated for publication). On March 28, 2017, Salazar filed notices of appeal.

On May 16, 2017, Salazar filed another motion for new trial and therein he requested an evidentiary hearing, complained of ineffective assistance of counsel, the improper admission of certain evidence during the punishment phase, and he sought a new trial "in the interest of justice." On May 25, 2017, the trial court entered an Order finding that the motion for new trial was "timely presented[]" to the trial court. On that same date, the trial court also entered an Order denying the motion for new trial, stating as follows:

> On the 25th day of May, 2017, came on to be considered the Defendant's Motion for New Trial. Having considered the motions, exhibits, evidence and/or arguments of counsel, the court is of the opinion that the motion should be: Denied.

4

The record reflects that on May 26, 2017, Salazar filed a "Motion for Court to Clarify Basis for Denial of Motion for New Trial." In the motion, Salazar alleged that, at a hearing on May 25, 2017, the trial court explained it was denying the motion for new trial not on its merits, but because Salazar did not have the right to file a motion for new trial.[3] In the motion, Salazar also indicated that the trial judge informed counsel that he might also deny it on the merits, and further that the court would review the motion and enter a ruling by the end of the day.

Evidence at Trial

Testimony of E.G.'s Sister, Mother, Aunt, and Grandmother

K.S., E.G.'s sister ("Sister" or "E.G.'s Sister") testified that, in July of 2007, she told her mother ("Mother" or "E.G.'s Mother") that Salazar was touching E.G. because E.G. had told the Sister it happened. E.G.'s Sister also testified that she did not remember Salazar touching E.G. and that she did not believe Salazar did anything wrong.

E.G.'s Mother testified that in July of 2007, when E.G. was twelve years old, E.G. and K.S. approached the Mother one afternoon before Salazar got home. According to the Mother, K.S. was worried and nervous, and E.G. was scared and

---

[3] There is no reporter's record for the hearing that Appellant contends occurred on May 25, 2017. We did not find anything in the record regarding whether the trial court ever ruled upon the motion to clarify.

5

upset. The Mother explained that E.G. told her that Salazar had touched her breasts. And, she testified that, when Salazar got home, she confronted him about what E.G. had reported, and Salazar said "it was a mistake[,]" that he was sorry, and that it would never happen again.

According to E.G.'s Mother, she learned of another outcry from the Mother's sister, E.G.'s "Aunt." The Aunt told E.G.'s Mother that E.G. made an outcry to the Aunt on January 3, 2010, when E.G. was fifteen years old. The Aunt also testified at the trial.

According to the Aunt, when she learned from E.G. what had happened to E.G., E.G.'s grandmother ("Grandmother") and Aunt decided to go to Houston to get E.G. The Grandmother and Aunt testified that, upon arriving in Houston, they informed E.G.'s Mother about what E.G. had told the Aunt, they picked up the children, and called the police. After talking with police, they went to the house to get clothes, and then drove back to Victoria, where the Aunt and Grandmother lived.

E.G.'s Mother also testified that, as they were leaving the family home, she saw that E.G. had Salazar's phone, and the Mother took the phone and kept it because she knew they needed the phone. E.G.'s Sister also testified that she recalled finding a phone lying on top of a car, and that she and E.G. tried to find a video that may have been on the phone.

E.G. testified that Salazar is her stepfather and that she was sixteen years of age at the time of trial. E.G. explained that in July of 2007, she told her Sister that Salazar had touched her inappropriately on the chest. According to E.G., at that time, the touching had been going on for "a couple of months." E.G. testified that Salazar touched her inappropriately "[m]ore than 20[]" times before she told anyone about it. E.G. recalled that when she told her Sister and Mother about the touching, they were angry with Salazar, and Salazar put his hands over his face and cried.

According to E.G., a few months later, Salazar asked E.G. to masturbate him while he was driving her home from a birthday party. E.G. explained that she knew that Salazar had ejaculated because he had worn a condom, and when he took it off, "there was stuff in the condom." E.G. testified that Salazar asked her to masturbate him another time when they were in his bedroom watching television. E.G. recalled this incident occurred before her youngest sister was born in March of 2008.

E.G. also testified about two occurrences when Salazar asked E.G. to give him oral sex. E.G. explained that on one such occasion, E.G. believed that Salazar was recording her with his phone because he was holding his phone out during the incident. According to E.G., she masturbated Salazar "[f]our to five times[]" and she performed oral sex on him "[t]hree to four[]" times. E.G. explained that she had told

7

her Sister and a teenaged male friend ("Friend") about the first incident of oral sex, and her Sister and her Friend encouraged her to tell an adult. E.G. testified that she made her second outcry to her Grandmother.

According to E.G., when Salazar and her Mother fought, Salazar "would get real angry and he would start throwing stuff." E.G. explained that she felt that she had torn her family apart and she was sad because her relationship with her Sister was not good. E.G. also testified that she does not like living in Victoria because her friends are not there.

Other testimony

Detective Tom Gannucci with the Montgomery County Sheriff's Office testified that he arranged for E.G. to be interviewed at Safe Harbor. According to Gannucci, following E.G.'s interview, he drove to Victoria to retrieve a cell phone from the Mother, from which he was eventually able to recover some images. Gannucci testified that he had spoken with Salazar during his investigation, but he did not get a statement.

Special Agent Stephen Santini with the Department of Homeland Security testified that he became involved in the case pursuant to a request to analyze a cell phone. Santini explained that he is assigned to a division of Homeland Security that is involved with computer forensics in child exploitation cases. Santini also

explained that when an image has been deleted from a cell phone, it is not recoverable if the first part of the image's file has been overwritten.

Dr. Lawrence Thompson, the director of therapy and psychological services at the Harris County Children's Assessment Center, testified that some children delay making an outcry due to fear, embarrassment, shame, or mixed feelings about the perpetrator. Dr. Thompson agreed that false allegations of sexual abuse of a child do occur. But, he further testified that false allegations of child sexual abuse are rare. Kari Prihoda, a forensic interviewer with Children's Safe Harbor testified that during her interview with E.G., E.G. appeared sad. Prihoda also testified that E.G. gave "lots of detail[]" especially as to sensory details during her interview.

Two of E.G.'s teenaged male friends also testified that E.G. had told them about her concerns about Salazar's conduct toward her.

## Issues on Appeal

Appellant raises four issues on appeal. Appellant's first issue argues that the trial court abused its discretion in denying his motion for new trial. In his second issue, he argues he was prejudiced by his trial counsel's ineffective assistance. In his third issue, Appellant argues the trial court erred in admitting certain photographs or images during the punishment phase of trial. And in his fourth issue, Appellant

argues that the trial court abused its discretion in refusing to grant his request for an evidentiary hearing on the issues raised in the motion for new trial.

Ineffective Assistance of Counsel Claim

Appellant's second issue argues that he was prejudiced by the ineffective assistance of his trial counsel. Specifically, Appellant alleges the following:

1. "Trial counsel failed to object to the State's bolstering of the complaining witness's testimony."

2. "Trial counsel failed to object to the detective testifying about the Appellant's express invocation of his right to remain silent."

3. "Trial counsel failed to introduce the fact that [the Appellant] did provide an exculpatory statement to Investigator C.D. Holditch, Jr. after the State put forth evidence that the [sic] he did not provide a statement to the detective."

4. "Trial counsel failed to investigate and present testimony from [Appellant's stepfather] to contradict the testimony of the complainant."

5. "Trial counsel failed to impeach the complainant with her prior inconsistent statement about the amount of times she was forced to give a 'hand job.'"

6. "Trial counsel failed to impeach the complainant with her prior inconsistent statement about the amount of times she was forced to give him a 'blow job.'"

7. "Trial counsel failed to question the complainant about her letter to [Appellant] on June 21, 2009."

8. "Trial counsel failed to object to the testimony of more than one outcry witness as hearsay."

10

9. "Trial counsel denied [Appellant] his constitutional right to testify."

10. "Trial counsel failed to prepare for the punishment phase of the trial and failed to subpoena material character witnesses to testify on Appellant's behalf."

To establish that he received ineffective assistance of counsel, Salazar must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error(s), the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland,* 466 U.S. at 689). An appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

11

The right to effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or that the representation must be errorless. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). The appropriate context is the totality of the representation; counsel is not to be judged on isolated portions of his representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990). Isolated failures to object to improper evidence or argument ordinarily do not constitute ineffective assistance of counsel. *See id.*; *Ewing v. State*, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977). In order to meet his burden regarding his claim that his counsel was ineffective for failing to object to evidence, Appellant must also establish that the trial court would have committed error in overruling such objection had an objection been made. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

1. "Trial counsel failed to object to the State's bolstering of the complaining witness's testimony."

Appellant complains that his trial counsel failed to object to certain testimony by Dr. Lawrence Thompson on the basis that it impermissibly bolstered the testimony of E.G. Appellant specifically notes the testimony of Dr. Thompson wherein he testified that, based on his own experience as well as scientific literature, between two and five percent of allegations of child sexual abuse are false and that "those cases with false allegations could be ones that the prosecutor doesn't bring to court because they have a sense that there is a false allegation in the case." According to Appellant, Dr. Thompson's testimony was inadmissible because it offered an opinion that the class of persons to which the complainant belongs, namely children, are typically truthful.

We review the trial court's decision on the admission of evidence for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). "To show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection." *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (citing *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996)).

"Bolstering" occurs when evidence is offered by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Stated another way, bolstering is

> any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

*Id.* at 819-20 (emphasis in original) (quoting Tex. R. Evid. 401). A witness generally may not testify directly as to the victim's truthfulness, as it does not concern a subject matter on which the testimony of an expert witness could assist the trier of fact and invades the province of the jury to determine witness credibility. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony[.]"); *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) ("Expert testimony does not assist the jury if it constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations."); *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (citing *Duckett v. State*, 797 S.W.2d 906, 914-15 (Tex. Crim. App. 1990)). "An expert who testifies that a class of persons to which the victim belongs is truthful is essentially

14

telling the jury that they can believe the victim in the instant case[.]" *Yount*, 872 S.W.2d at 711.

Dr. Thompson testified that he does clinical, and not forensic, interviews. According to Dr. Thompson, a clinical interview is not a "truth-finding mission[,]" and the goal of a clinical interview is to understand a person's issues in order to provide psychological treatment. Based on our review of the record, we cannot say that the sole purpose of Dr. Thompson's testimony was to convince the jury of E.G.'s credibility. *See Cohn*, 849 S.W.2d at 819-20. Dr. Thompson did not express an opinion as to whether E.G.'s allegations had merit, whether she was a trustworthy witness, or whether children as a class are truthful. On the record before us, Salazar has not met his burden to show that the trial court would have committed error in overruling such an objection had it been made. *See Vaughn*, 931 S.W.2d at 566. The trial court's decision to admit the complained-of evidence was within the zone of reasonable disagreement and did not constitute an abuse of discretion. *See Martinez*, 327 S.W.3d at 736; *see also Robles v. State*, No. 10-12-00398-CR, 2013 Tex. App. LEXIS 13790, at **6-7 (Tex. App.—Waco Nov. 7, 2013, pet. ref'd) (mem. op., not designated for publication). Therefore, we cannot say the trial court would have committed error in overruling a bolstering objection to Dr. Thompson's testimony if such objection had been made. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim.

App. 2004). Because Appellant has not shown deficient performance, we need not consider whether prejudice resulted. *See Williams*, 301 S.W.3d at 687; *Rylander*, 101 S.W.3d at 110.

2. "Trial counsel failed to object to the detective testifying about the Appellant's express invocation of his right to remain silent."

Appellant argues that his trial counsel's performance was deficient in that he failed to object when Detective Gannucci testified that Salazar had not made any kind of statement to him. The following exchange occurred when the State's counsel examined the Detective:

[State's counsel]: Did you attempt to make contact with the suspect?

[Gannucci]: Yes.

[State's counsel]: And did you get any kind of statement?

[Gannucci]: No.

[State's counsel]: And did you actually speak with the suspect?

[Gannucci]: Yes.

Attached to Salazar's motion for new trial was a document Salazar characterized as an excerpt from Detective Gannucci's supplement to the offense report. The excerpt includes the following: "On 01/13/10, I talked with the suspect via phone and asked if [he] would come to the Magnolia Detective's Office to give a statement. The suspect said he hired an attorney and was told not to talk with me."

16

Nothing on the face of this document expressly connects it to Detective Gannucci. But even assuming the document could be authenticated and admitted, we cannot say that it supports a conclusion that Salazar's trial counsel's performance was deficient. Salazar does not argue that he was detained, in custody, or arrested at the time he declined to give the statement to the Detective. *See Miranda v. Arizona*, 384 U.S. 436, 444-445 (1966) (explaining that *Miranda* rights apply to statements made or silence invoked during custodial interrogation). As the Court of Criminal Appeals has explained, "[i]n pre-arrest, pre-*Miranda* circumstances, a suspect's interaction with police officers is not compelled. Thus, the Fifth Amendment right against compulsory self-incrimination is 'simply irrelevant to a citizen's decision to remain silent when he is under no official compulsion to speak.'" *Salinas v. State*, 369 S.W.3d 176, 179 (Tex. Crim. App. 2012) (quoting *Jenkins v. Anderson*, 447 U.S. 231, 241 (1980) (Stevens, J., concurring). On the record before us, we find no evidence that Salazar was subject to custodial interrogation at the time he declined to give a statement to Detective Gannucci, and no Fifth Amendment protections would have applied. *See Salinas*, 369 S.W.3d at 179. Therefore, the trial court would not have erred in overruling a Fifth Amendment objection to Gannucci's testimony if such objection had been made, and we cannot conclude that Salazar's trial counsel failed to perform deficiently by failing to lodge such objection.

17

<u>3. "Trial counsel failed to introduce the fact that Mr. Salazar did provide an exculpatory statement to Investigator C.D. Holditch, Jr. after the State put forth evidence that he did not provide a statement to the detective."</u>
<u>10. "Trial counsel failed to prepare for the punishment phase of the trial and failed to subpoena material character witnesses to testify on Appellant's behalf."</u>

We address these two complaints together as they both pertain to trial counsel's alleged failure to introduce certain evidence at trial. Appellant argues that his trial counsel performed deficiently by failing to introduce evidence of an "exculpatory" statement Salazar made to Investigator C.D. Holditch Jr. Attached to Salazar's motion for new trial is a document that includes a document labeled as "Contact Narrative" by Investigator Holditch. The document's footer reflects that it was printed on July 18, 2011, at the Texas Department of Family and Protective Services. The document also includes the following: "He denied any inappropriate touching. He said years ago he and his children would wrestle on the floor but once he noticed she was developing [] he stopped touching her at all." Appellant also argues that his trial counsel was deficient for failing to subpoena certain persons who would have testified "to issues including, but not limited to, [] Salazar's care and love for his family and friends, his hard working character, and their opinion that he is a good person." Attached to his motion for new trial are unsworn declarations by four persons, in which they state they would have been available to testify at Salazar's trial and would have testified that he was a good person and it would have

18

been out of character for Salazar to have committed the crimes for which he was charged.

As to the Holditch document, we note that Salazar has not shown that the document could have been properly authenticated and admitted. *See DeLeon v. State*, 322 S.W.3d 375, 382 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("Appellant offers no argument as to whether this evidence would have been properly admitted. . . . Accordingly, he has not met his burden to show that counsel's performance was deficient under the first prong of *Strickland*."). Furthermore, E.G.'s Sister testified that after Salazar had touched E.G. accidentally when they were wrestling, he apologized to E.G., and E.G. testified that, when she described to her Sister that Salazar was touching E.G., E.G. was not talking about anything that occurred while wrestling. Additionally, the trial court could have reasonably concluded that any denial Salazar made to Investigator Holditch as noted in the report would have been cumulative of his not-guilty plea. *See King v. State*, 9 Tex. Ct. App. 515, 544 (1880) (a plea of "not guilty" is the same as if the defendant had denied every element of the crime charged).

As to the additional witnesses Salazar claims would have testified to Salazar's good character, such testimony would have been merely cumulative of the testimony of others who did testify on behalf of Salazar. E.G.'s Sister, who was Salazar's

19

biological daughter, testified during the guilt phase that she did not believe Salazar committed the crimes charged because "he's just too much of a good person to do something like that." During the punishment phase, Salazar's mother testified that Salazar is a "great dad[,]" has good relationships with his children, and "[t]he kids all love him. He's a good provider and good, hard worker."

"Weighing the advantages and disadvantages of calling a particular witness to testify is a matter usually left within the province of trial counsel's discretion." *Ex parte Ruiz*, Nos. WR-27,328-03 & WR-27,328-04, 2016 Tex. Crim. App. LEXIS 1341, at *43 (Tex. Crim. App. Nov. 9, 2016) (citing *Ruiz v. Thaler*, 783 F.Supp.2d 905, 949 (W.D. Tex. 2011)). When unadmitted mitigating evidence is similar to admitted evidence, an appellant is unlikely to be able to show that the unadmitted evidence would have "tipped the scale" in his favor. *See Ex parte Martinez*, 195 S.W.3d 713, 731 (Tex. Crim. App. 2006). We cannot conclude that trial counsel's failure to introduce additional mitigation evidence that would have been cumulative of other mitigation evidence that was admitted at trial constitutes proof of deficient performance or prejudice under *Strickland*. *See Wong v. Belmontes*, 558 U.S. 15, 22-23 (2009) (failure to introduce additional mitigating evidence that would have been cumulative did not establish *Strickland* prejudice); *Sincere v. State*, No. 11-11-00056-CR, 2013 Tex. App. LEXIS 2341, at *8 (Tex. App.—Eastland, no pet.)

20

(mem. op., not designated for publication) (appellant did not establish that trial counsel was deficient for failing to present cumulative alibi testimony). Accordingly, Appellant has failed to show either deficient performance or prejudice as to these two alleged failures by his trial counsel.

4. "Trial counsel failed to investigate and present testimony from [Appellant's stepfather] to contradict the testimony of the complainant."
5. "Trial counsel failed to impeach the complainant with her prior inconsistent statement about the amount of times she was forced to give a 'hand job.'"
6. "Trial counsel failed to impeach the complainant with her prior inconsistent statement about the amount of times she was forced to give him a 'blow job.'"
7. "Trial counsel failed to question the complainant about her letter to [Appellant] on June 21, 2009."

We consider these issues together as they all pertain to impeachment of E.G.'s testimony. Generally, a party may impeach a witness with evidence of a prior inconsistent statement. Tex. R. Evid. 613(a); *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). And, a witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness or by testimony in the form of an opinion about that character. Tex. R. Evid. 608(a). Nevertheless, "[c]ross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). A decision to limit cross-examination or even not to cross-examine a witness can frequently be considered sound trial strategy. *See Miniel v.*

21

*State*, 831 S.W.2d 310, 324 (Tex. Crim. App. 1992) (quoting *Coble v. State*, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973)); *see also McFarland*, 163 S.W.3d at 756 ("It is frequently a sound trial strategy not to attack a sympathetic eyewitness without very strong impeachment."); *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.— Houston [14th Dist.] 1996, pet. ref'd) (explaining that cross-examining a sympathetic witness can offend jurors). As a general rule, a party is not entitled to impeach a witness on a collateral or immaterial matter. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990). A collateral matter is one that seeks only to test a witness's general credibility or relates to facts irrelevant to issues at trial. *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984). As we have previously explained, the decision whether to call a witness is within the province of trial counsel's discretion. *Ruiz*, 2016 Tex. Crim. App. LEXIS 1341, at *43. Trial counsel's failure to call witnesses is "irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).

Appellant complains that his trial counsel failed to present the testimony of his stepfather. Appellant argues that his stepfather's testimony would have contradicted certain testimony by E.G., specifically, her testimony that when Salazar was working on an electrical outlet in her room with his stepfather, she heard Salazar

say "[y]ou need to find my bag of nuts, but when you find them be gentle with them[.]" Salazar attached an affidavit of his stepfather to his motion for new trial, in which his stepfather attested that he remembered working with Salazar on an electrical issue in E.G.'s room, but he did not recall hearing this statement "or any wording similar to that." The trial court could have reasonably concluded from the affidavit that the stepfather's testimony pertained to a collateral matter that pertained to a witness's general credibility or relates to facts that were not relevant to the crimes charged. *See Keller*, 662 S.W.2d at 365. Therefore, the trial court could have concluded that Salazar had no right to impeach E.G. concerning her testimony regarding the "bag of nuts" statement. *See Ramirez*, 802 S.W.2d at 675. As a consequence, the trial court could have reasonably concluded that Salazar's trial counsel's performance would not have been deficient for failing to elicit testimony by Salazar's stepfather. *See Rylander*, 101 S.W.3d at 110 (an appellant's failure to show deficient performance defeats a claim of ineffective assistance). In addition, on appeal, Appellant fails to explain how his defense was prejudiced as a result, or how the result of his trial would have been different had his stepfather testified that he did not remember hearing this comment. *See Strickland*, 466 U.S. at 687-88, 694; *Delamora v. State*, 128 S.W.3d 344, 363, 367 (Tex. App.—Austin 2004, pet. ref'd)

23

(no error to deny admission of evidence that was of "minimal relevance" and merely collateral or impeaching, and any error from its exclusion was harmless).

Next, Appellant complains that his trial counsel failed to impeach E.G. regarding the number of times she was forced to masturbate Salazar and to give him oral sex. At trial, E.G. testified that Salazar forced her to masturbate him "[f]our to five times[]" and he forced her to give him oral sex "[t]hree to four[]" times. With his motion for new trial, Salazar submitted documents he characterized as "supplemental reports" of the Montgomery County Sheriff's Office. The documents Salazar provided stated that, in her forensic interview, E.G. had reported she masturbated Salazar twice and gave him oral sex "4 or 5 times." According to Salazar, impeaching E.G. regarding these inconsistencies "was important to counter the State's argument that she was being consistent."

According to Appellant, the "supplemental report[s]" purport to convey the substance of E.G.'s forensic interview with Kari Prihoda. We note that during Prihoda's testimony at trial, both parties acknowledged that Prihoda could not testify as to what E.G. had told her. Appellant also offered no argument as to whether this evidence could be properly authenticated and admitted. We conclude that Appellant failed to meet his burden to show that counsel's performance was deficient under the first prong of *Strickland*. *See DeLeon*, 322 S.W.3d at 382.

24

A witness's prior inconsistent statement may be admissible as non-hearsay if it was made "under penalty of perjury at a trial, hearing, or other proceeding . . . or in a deposition[.]" Tex. R. Evid. 801(e)(1)(A)(ii). The appellate record does not reflect that the statements E.G. allegedly made in her forensic interview were made under oath in a qualifying proceeding, nor does Salazar argue that the statements qualify as prior inconsistent statements under Rule 801. In addition, to the extent that E.G. reported a different number of instances of criminal conduct by Salazar in her forensic interview, the trial court could have concluded that any inconsistency between E.G.'s trial testimony and her forensic interview would not be exculpatory, and would only relate to her credibility. *See Ramirez*, 802 S.W.2d at 675 (a party is generally not entitled to impeach a witness on a collateral or immaterial matter). We note that at trial, E.G.'s Mother testified that E.G. was not always truthful, and the Sister testified that E.G. was known in the family for making up lies and telling stories. Considering the record as a whole, we further conclude that Salazar has failed to show a reasonable probability that the result of the proceeding would have been different had the forensic interview evidence been admitted to impeach E.G. *See Strickland*, 466 U.S. at 694; *Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988) ("Absent a showing by appellant that he would have benefitted from the

25

testimony, the decision not to call witnesses at either stage of trial does not raise the spectre of ineffective assistance.") (citing *King*, 649 S.W.2d 42).

Appellant also argues that his trial counsel's performance was deficient because he failed to question E.G. concerning a June 21, 2009 letter to Salazar. Attached to his motion for new trial was a letter purportedly written by E.G. that expressed affection and appreciation and stated in part "I love you Daddy[.]" Appellant argues that, according to the chronology of events E.G. related at trial, the letter would have been written after Salazar had forced her to masturbate him and when she was scared of him.

Even assuming the document could be authenticated and admitted, Salazar did not meet his burden to show that counsel's failure to offer this letter into evidence constituted a deficient performance, nor did he show a reasonable probability that the result of the proceeding would have been different had the letter been offered into evidence. *See Strickland*, 466 U.S. at 687-88, 694. Accordingly, we conclude that the trial court could have reasonably concluded that Appellant failed to show that there is a reasonable probability that the result of the proceeding would have been different. *See id.* at 694.

8. "Trial counsel failed to object to the testimony of more than one outcry witness as hearsay."

According to Appellant, his trial counsel was deficient for failing to object to the testimony of E.G.'s Sister and Friend because their testimony was inadmissible hearsay. Appellant also argues that trial counsel failed to object to the trial court's failure to hold a hearing on the Sister's and the Friend's "outcry testimony" pursuant to section 38.072 of the Texas Code of Criminal Procedure.

Section 38.072 of the Texas Code of Criminal Procedure provides a statutory exception to the rule against hearsay, and section 38.072 allows the first person to whom the child described the offense in some discernible manner to testify about the statements the child made. Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2017); *Garcia v. State*, 792 S.W.2d 88, 90-91 (Tex. Crim. App. 1990). Article 38.072 provides that in sexual offense cases committed against a child fourteen years of age or younger, statements by the child about the alleged offense to the first person eighteen years of age or older, other than the defendant, about the offense will not be inadmissible because of the hearsay rule. Tex. Code Crim. Proc. Ann. art. 38.072. The trial court has broad discretion to determine whether the child's statement falls within this hearsay exception. *See Garcia*, 792 S.W.2d at 92. Outcry testimony is admissible from more than one witness if the witnesses testify about different events, but there may be only one outcry witness per event. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

"Though the terms do not appear in the statute, the victim's out-of-court statement is commonly known as an 'outcry,' and an adult who testifies about the outcry is commonly known as an 'outcry witness.'" *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). In this case, E.G.'s Sister was thirteen years of age at the time of trial, and the Friend was fifteen years of age. Because neither the Sister nor the Friend was an adult, neither could be an outcry witness under article 38.072. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(3) (defining outcry witness as "the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense[]").

Our inquiry does not end here. "The appropriate question to ask next, of course, is whether the substance of the out of court declaration—'what was said'— has any relevance at all *apart* from the truth of the matter asserted." *See Dinkins v. State*, 894 S.W.2d 330, 364 (Tex. Crim. App. 1995). A statement not offered to prove the truth of the matter asserted is not hearsay. *Id.* at 347-48; *see also* Tex. R. Evid. 801(d) (limiting hearsay to evidence offered to prove the truth of the matter asserted). We uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

During the Friend's testimony, the following exchange occurred:

28

[State's counsel]: Do you recall a time where she called and talked to you about something that was going on in Magnolia that was causing her concern?

[Friend]: Yes. The night that she cried out to me we were just talking and she sounded really stressed out and scared. So I asked her what was wrong and she opened up and told me everything.

[State's counsel]: And you can't talk about what she told you --

[Friend]: Okay.

[State's counsel]: -- but did it involve something to do with her step dad?

[Friend]: Yes.

. . . .

[State's counsel]: What did you tell [E.G.]?

[Friend]: I said if it's really going on, she should tell parents and if she didn't, I was going to have to tell my mom to talk to her grandmother.

[State's counsel]. How did she sound?

[Friend]: She was really scared and kept telling me not to and then she told me to hold on and she would call me back and she called me back and said she had told her grandmother.

[Defense counsel]: Objection; hearsay.

THE COURT: Don't repeat what she said, please. I heard you say she called you back. So anything after that I think would be hearsay and I sustain the objection.

29

According to Appellant, the Friend's testimony that E.G. "cried out" to him and told him everything constituted hearsay. We disagree. The trial court could have reasonably concluded that the Friend's testimony was not offered for the truth of any statement made by E.G. but for the fact that E.G. had talked to the Friend and that the Friend understood that E.G. was scared and upset. *See, e.g.*, *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999); *Dinkins*, 894 S.W.2d at 347; *see also* Tex. R. Evid. 803(3) (providing an exception to hearsay for a statement of the declarant's then-existing state of mind).

Appellant argues that certain portions of the Sister's testimony contained inadmissible hearsay, namely that E.G. told the Sister that Salazar was touching E.G. inappropriately. Appellant's brief acknowledges that E.G.'s Mother was the outcry witness as to E.G.'s first outcry that Salazar was touching E.G.'s breasts. We also note that E.G. testified at trial that Salazar had touched her breasts. Accordingly, the complained-of portion of the Sister's testimony would have been cumulative of admissible evidence and, as such, we are unable to conclude that, had trial counsel objected, the outcome of the trial would have been different. *See Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986) ("If the fact to which the hearsay relates is sufficiently proved by other competent and unobjected to evidence, . . . the admission of the hearsay is properly deemed harmless and does not constitute

reversible error."); *In re AWT*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.). We cannot say the trial court abused its discretion in admitting the complained-of statements by the Sister and the Friend, and, therefore, trial counsel's performance would not have been deficient for a failure to make hearsay objections.

9. "Trial counsel denied [Appellant] his constitutional right to testify."

Appellant argues he told his attorney he wanted to testify and his attorney told him he was not going to put him on the stand. Salazar's unsworn declaration attached to his motion for new trial includes the following statement:

> I told my attorney that I wanted to testify. My attorney told me he was not going to put me on the stand. I was not aware that I had the final authority to make the decision on whether to testify and my attorney failed to inform me of this. If I had known that I could testify against my attorney's wishes, I would have done so. I would have testified that I never intentionally touched [E.G.] inappropriately. I would have testified that [E.G.] did not like when I was strict with the rules and I would not let her talk to boys late at night on the phone and do everything she wanted to do. She would become very upset with me about not letting her do what she wanted to do.

According to Salazar, if he had known he could testify and had done so, "the jury would have been able to evaluate his credibility and there is a reasonable probability that they would have decided to find him not guilty."

While the right to testify is fundamental, an appellant alleging ineffective assistance of counsel because he was deprived of this right to testify must still show prejudice under *Strickland*. *See Johnson v. State*, 169 S.W.3d 223, 228-39 (Tex.

31

Crim. App. 2005). Appellant's assertion that he would have benefitted from his own testimony is mere speculation. To the extent Appellant has suggested he would have testified that he "never intentionally touched [E.G.] inappropriately[,]" such testimony would have been redundant of his not-guilty plea. *See King*, 9 Tex. Ct. App. at 544. The only additional evidence Appellant's proffered testimony would have contributed would have been that E.G. disliked Appellant's rules and parenting, possibly implying a motive for her to be untruthful. However, the Sister testified that E.G. would get sad or mad because her Mother and Salazar had taken away E.G.'s phone due to an issue with her grades. The Sister also testified that she thought E.G. liked living with the Grandmother in Victoria "[f]or freedom[,]" because she gets to bring friends to the house and would sometimes "sneak to a boy's house." Appellant's motion and supporting affidavits fail to establish that, had he testified in his own behalf, there is a reasonable probability that the results of the proceeding would be different. *See Strickland*, 466 U.S. at 694.

In sum, examining all the errors alleged by Appellant in light of counsel's representation as a whole, we cannot say that Appellant has satisfied his burden to show that, but for the alleged errors, the outcome of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 813; *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991). On this record, Appellant has not made the required

32

showings of deficient performance and prejudice as required by *Strickland*. *See Strickland*, 466 U.S. at 687-88, 694. We overrule Appellant's second issue.

Admission of Evidence

In his third issue, Salazar challenges the admission of certain evidence during the punishment phase of trial. Specifically, he argues that the admission of "adult pornographic images" and a photograph of human feces in a toilet was in error because such evidence was not relevant to sentencing and was highly prejudicial.

We review a trial court's decision to admit punishment evidence under an abuse-of-discretion standard. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010); *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). The trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Davis*, 329 S.W.3d at 803; *Walters*, 247 S.W.3d at 217. If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will uphold that decision. *De La Paz*, 279 S.W.3d at 344.

The erroneous admission of evidence is non-constitutional error that is subject to a harm analysis under rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 44.2(b); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston

33

[1st Dist.] 2002, pet. ref'd). We must disregard non-constitutional error unless it affects the substantial rights of the defendant. Tex. R. App. P. 44.2(b). During the punishment phase of a non-capital criminal trial, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing[.]" *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2017); *McGee*, 233 S.W.3d at 318. Admissibility of evidence at the punishment phase of a trial of a non-capital felony offense is a function of policy rather than relevancy, and the definition of "relevant" in Texas Rule of Evidence 401 "is of little avail because the factfinder's role during the guilt phase is different from its role during the punishment phase." *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009); *Come v. State*, 82 S.W.3d 486, 491 (Tex. App.—Austin 2002, no pet.). Evidence is relevant if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the case. *Hayden*, 296 S.W.3d at 552 (citing *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)); *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006).

During the punishment phase of Salazar's trial, outside the presence of the jury, the State sought to pre-admit four photos and one image that were recovered from the Appellant's phone. Defense counsel objected that the pictures were more prejudicial than probative and that "none of those pictures are indicative of any

children or anything like that." The State responded that the images were obtained from Salazar's phone, and that testimony would show that Defendant sometimes showed one of the images, "little cartoon pictures from his phone relating to doing sexual acts[,]" to E.G. The trial court admitted the images "for purposes of aiding the jury in perhaps deciding the state of mind of [Salazar]" and the images were published to the jury.

At trial, E.G.'s Sister testified that she found Salazar's cell phone and that she and E.G. had attempted to find a video on the cell phone. E.G. also testified that she believed that Salazar had used his phone to make a recording of her giving him oral sex. In addition, E.G. testified that Salazar had not shown her pornographic images, but that she had seen cartoons related to sexual acts on Salazar's phone.

Detective Gannucci testified that he had retrieved Salazar's cell phone from E.G.'s Mother after she and the children had gone to Victoria. Special Agent Santini, an analyst with the Department of Homeland Security assigned to computer crimes and child exploitation, explained that he recovered the images in State's Exhibits 18 through 23 from a cell phone a detective had given to him. Santini testified that "there were also pictures that were recovered from the deleted section which led me to believe that they had to do with some child exploitation pictures[.]" Santini described one of the images as a cartoon that depicted a "snowman and snow woman

35

in various sexual positions." According to Santini, in child exploitation cases, he looks for cartoons depicting sexual acts that could be used to make a child feel at ease and more comfortable regarding sexual acts. He described the other images as depicting male genitalia, what "looks like human feces in a toilet bowl[,]", and an image that "looks like some type of person -- looks like a person tied up in the back and someone suspended from a bar or some type -- it looks like they are naked."

At trial, Appellant objected to the admission of these images as more prejudicial than probative. However on appeal, his appellate brief does not include an analysis of the rule 403 balancing factors. *See* Tex. R. App. P. 38.1(i); *see also Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (discussing rule 403 balancing factors). Appellant argues that "some nex[u]s must exist to make evidence of the defendant's use of *adult* pornography relevant in cases involving sexual offenses against children." *See Akin v. State*, No. 06-14-00178-CR, 2015 Tex. App. LEXIS 9687, at **15-16 (Tex. App.—Texarkana 2015, pet. ref'd) (mem. op., not designated for publication); *Cox v. State*, Nos. 13-00-184-CR & 13-00-185-CR, 2001 Tex. App. LEXIS 5485, at **12-13 (Tex. App.—Corpus Christi 2001, no pet.) (not designated for publication). *Akin* and *Cox*, to which Appellant cites, pertain to the admission of evidence during the guilt-innocence phase of trial and are

distinguishable on that basis. Moreover, there was no testimony at Salazar's trial characterizing the images as "adult."

On this record, we cannot say that the images were irrelevant in light of Special Agent Santini's testimony, and we cannot say the trial court abused its discretion in admitting the images. Considering all of the evidence discussed and the entire record, we have fair assurance that, even if the trial court erred in admitting these exhibits, the evidence did not influence the jury, or had but a very slight effect on the jury, in determining Appellant's punishment. *See* Tex. R. App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). We overrule Appellant's third issue.

## Motion for New Trial

In his first issue, Salazar argues that the trial court erred in denying his motion for new trial. And in his fourth issue, Salazar argues that the trial court erred in refusing to grant Salazar's request for an evidentiary hearing on the issues raised in his motion for new trial. We will address these issues together as both issues pertain to the motion for new trial.

We review a trial court's grant or denial of a motion for new trial for an abuse of discretion. *State v. Gutierrez*, No. PD-0197-16, 2017 Tex. Crim. App. LEXIS 1003, at *10 (Tex. Crim. App. Oct. 18, 2017) (citing *State v. Herndon*, 215 S.W.3d

901, 906-07 (Tex. Crim. App. 2007)). We also review a trial court's denial of a defendant's request for a hearing on a motion for new trial using an abuse-of-discretion standard. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion only if its ruling is clearly erroneous and arbitrary and is not supported by any reasonable view of the record. *Id.*; *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). When deciding whether a trial court erred in ruling on a motion for new trial, we view the evidence in the light most favorable to the court's ruling and give almost total deference to the court's findings of historical fact. *See Riley*, 378 S.W.3d at 457-58. In order for a defendant to be entitled to a new trial on the basis of newly discovered evidence, the defendant must meet a four-pronged test, which includes in part establishing that the evidence is admissible and not "merely cumulative, corroborative, collateral, or impeaching[.]" *See Carsner v. State*, 444 S.W.3d 1, 2 (Tex. Crim. App. 2014) (citing *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002)).

A defendant does not have an absolute right to a hearing on a motion for new trial. *Smith*, 286 S.W.3d at 338. The purposes of a hearing on a motion for new trial are to decide whether the case should be retried and to "prepare a record for presenting issues on appeal in the event the motion is denied." *Id.* A hearing is only

38

required when the motion raises matters which cannot be determined from the record. *Id.* And, even when a defendant raises matters not determinable from the record, he is not entitled to a hearing on his motion for new trial unless he also "establishes the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *Id.* at 339 (noting this requirement is imposed to avoid fishing expeditions at a motion for new trial hearing). Therefore, the motion for new trial must be supported by an affidavit from the defendant or another person specifically setting out the factual basis for the claim to be entitled to a hearing. *Id.* The affidavit need not establish a prima facie case, or even "'reflect every component legally required to establish' relief." *Id.* (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). An affidavit is sufficient "if a fair reading of it gives rise to reasonable grounds in support of the claim." *Id.* An affidavit that is conclusory or that is unsupported by facts, or that fails to explain how the counsel's alleged deficiency would have changed the verdict is not sufficient and does not warrant a hearing on the motion for new trial. *Id.*[4]

---

[4] In *Smith*, the appellant was indicted for sexual assault, he later pleaded guilty pursuant to a plea agreement, and the trial court placed him on ten years' deferred adjudication community supervision. *Smith v. State*, 286 S.W.3d 333, 335-36 (Tex. Crim. App. 2009). Eight years later the State filed a motion to adjudicate for violations of the community supervision. *Id.* at 336. A hearing was held on the motion to adjudicate and evidence was presented by the State. Smith did not testify

39

at the hearing. *Id.* The trial court found one or more allegations true and adjudicated appellant guilty and sentenced him to twenty years in prison. *Id.*

Smith filed a motion for new trial and a request for a hearing, alleging his trial counsel was ineffective for failing to submit certain medical evidence and failing to inform Smith of his right to testify. *Id.* Smith further alleged in his supporting affidavit that he would have testified and rebutted certain statements from the victim and the probation officer, and that the medical records would have shown he did not abuse prescription medications and explained his surgery. *Id.* According to Smith, the information "may well have resulted in a different outcome." *Id.* The motion for new trial was denied without any hearing. *Id.* at 336-37.

The Court of Appeals reversed concluding that Smith was entitled to a hearing on the motion for new trial. *Id.* at 337. The Court of Criminal Appeals reversed and remanded the case back to the Court of Appeals, concluding as follows:

> The appellant's motion for new trial and supporting affidavit raised a matter not determinable from the record, namely, that trial counsel was ineffective for failing to inform him of his right to testify on his own behalf and to enter certain medical records into evidence. However, despite having raised a matter not determinable from the record, the appellant failed to establish reasonable grounds to believe that he could, under *Strickland*, prevail on his claim of ineffective assistance of counsel, entitling him to a new adjudication proceeding. Specifically, by failing to explain how counsel's allegedly unprofessional errors would have changed the trial court's finding of true on all three violations in the State's motion to adjudicate, the appellant failed to show that but for counsel's deficiency the result of the hearing to adjudicate guilt would have been different. Consequently, appellant did not present facts adequate to demonstrate reasonable grounds exist to believe he could prove ineffective assistance of counsel at an evidentiary hearing. Under these circumstances, the trial court did not abuse its discretion in failing to hold to a hearing on the appellant's motion for new trial.

*Id.* at 345.

Texas Rule of Appellate Procedure 21.7 provides that the "court may receive evidence by affidavit or otherwise[]" at the hearing. Tex. R. App. P. 21.7. Accordingly, a trial court does not have to receive live testimony at the hearing. *Holden v. State*, 201 S.W.3d 761, 763-64 (Tex. Crim. App. 2006) (discussing rule 21.7).

Accordingly, it is clear that when a motion for new trial relies on a claim of ineffective assistance of counsel, as does Salazar's, the defendant's motion "must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith*, 286 S.W.3d at 341; *see also Strickland*, 466 U.S. at 694.

The motion must be supported by affidavit(s), specifically showing the truth of the grounds of attack. *King*, 29 S.W.3d at 569; *Edwards v. State*, 37 S.W.3d 511, 514 (Tex. App.—Texarkana 2001, pet. ref'd). However, if the affidavits do not supply reasonable grounds that would entitle the accused to the relief sought, the trial court does not abuse its discretion in refusing to hold a hearing. *King*, 29 S.W.3d at 569; *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). While the affidavits are not required to reflect every argument legally required to establish

relief, the motion or affidavits must reflect that reasonable grounds exist for holding that such relief could be granted. *Edwards*, 37 S.W.3d at 514.

We note that Appellant contends on appeal that the trial court failed to hold a hearing on the motion for new trial. However, according to the motion to clarify that was filed by the defense counsel after the trial court denied the motion for new trial, defense counsel attended a "hearing" on May 25, 2017, wherein the parties presented arguments to the trial court on the motion for new trial and the trial court made certain statements regarding the motion for new trial and took it under advisement. Therefore, it appears that the trial court may have actually held a "hearing" of some type, although a reporter's record does not appear in our appellate record. The rules of appellate procedure do not require a trial court to receive live testimony and it can consider evidence presented by affidavit. Tex. R. App. P. 21.7.

Nevertheless, assuming without deciding that there was no "hearing" held by the trial court on the motion for new trial, as noted above in our discussion of the other issues, Salazar failed to present facts that were adequate to demonstrate reasonable grounds existed to believe he could establish a basis for an ineffective assistance claim, or a basis for the admission of or materiality of the additional witnesses or evidence he references, or grounds for establishing improper admission of evidence during the punishment phase. Accordingly, we conclude that the trial

42

court's ruling denying the motion for new trial and the decision to rule on the motion for new trial without holding a hearing to obtain further evidence was within the zone of reasonable disagreement. *See Smith*, 286 S.W.3d at 339; *King*, 29 S.W.3d at 569; *Jordan*, 883 S.W.2d at 664.

Nor can we conclude on the record before us that the trial court's denial of Salazar's motion for new trial was clearly erroneous and arbitrary or not supported by a reasonable view of the record. *See Gutierrez*, 2017 Tex. Crim. App. LEXIS 1003 at *10. The trial court could have reasonably concluded that the matters raised in the motion for new trial and the attached declarations were either inadmissible, cumulative, or did not establish, even if true, that the result of the trial would have been different. The trial court was aware of the evidence presented at trial both during the guilt and sentencing phases of trial, and the trial court was familiar with the overall performance of trial counsel, as well as the testimony of the witnesses. The trial court could have reasonably concluded that the strength of the State's case was such that the affidavits offered by Salazar, even if true, were not compelling enough to probably bring about a different result in a new trial and, therefore, that Appellant's motion and accompanying affidavits did not show that he was entitled to relief. *See Wallace*, 106 S.W.3d at 108. Appellant has not demonstrated that any of his counsel's complained-of errors affected his substantial rights. *See State v.*

*Thomas*, 426 S.W.3d 233, 239 (Tex. App.—Houston [1st Dist.] 2012), *affirmed by* 428 S.W.3d 99 (Tex. Crim. App. 2014) (citing *Herndon*, 215 S.W.3d at 908). Therefore, we conclude that the trial court did not abuse its discretion in denying Salazar's motion for new trial or in failing to hold a hearing. *Id.*; *Keeter*, 74 S.W.3d at 36-37. We overrule Salazar's first and fourth issues.

Having overruled all of Appellant's issues, we affirm the judgments of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on February 21, 2018
Opinion Delivered May 23, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

44